```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
In re: EPHEDRA PRODUCTS LIABILITY         :    04 M.D. 1598 (JSR)
LITIGATION                                :
                                          :    OPINION AND ORDER
------------------------------------------X
PERTAINS TO Wilburn v. N.V.E. et al.,
No. 06 Civ. 13046, and Stafford v. Weight
Warriors Inc. et al., No. 05 Civ. 3021
```

JED S. RAKOFF, U.S.D.J.

In these two unrelated cases governed by Texas substantive law, the defendants concurrently argue that a recent Texas Supreme Court decision — Borg-Warner Corp. v. Flores, — S.W.3d —, 2007 WL 1650574 (Tex., June 8, 2007) — entitles them to dismissal of the respective plaintiffs' claims. In *Wilburn v. N.V.E.* et al., No. 06 Civ. 13046, defendant Body Dynamics Inc. ("BDI") moved for exclusion not only of plaintiff's specific-causation witness but also of the general-causation opinions which this Court has ruled admissible. See Daubert Opinion and Order of September 18, 2005. In Stafford v. Weight Warriors Inc. et al., No. 05 Civ. 3021, the Weight Warrior defendants made an e-mail application through the Special Master to renew their summary-judgment motion — which was denied in an Opinion and Order dated March 26, 2007 — because of the subsequently decided Borg-Warner case. Both the Wilburn motion and the Stafford application are denied.

In *Wilburn*, BDI argues that Borg-Warner tightened the

1

standard for proving causation in all toxic-tort cases under Texas law by requiring proof of the dose of exposure to each accused product; since the court-approved plaintiffs' general-causation opinions in this MDL did not quantify the dose capable of causing Wilburn's injury (ischemic stroke), and since Wilburn's specific-causation expert did not consider the dose of Wilburn's exposure to BDI's ephedra product, BDI argues that Wilburn's evidence of causation is insufficient to support a judgment in products liability under Texas law and therefore inadmissible under Rule 702 Fed. R. Evid.

Although the Court disagrees with BDI about the applicability of Borg-Warner to ephedra (see the discussion of Stafford, below), Wilburn's motion must be denied on procedural grounds before reaching this substantive question.  The way for a defendant to obtain a pretrial determination of the sufficiency of plaintiff's evidence is to make a motion for summary judgment in compliance with Rule 56 Fed. R. Civ. P., Local Civil Rule 56.1, and relevant orders.  Here, having missed the deadline for filing a summary-judgment motion set by the Case Management Orders (and extended at the parties' request by the Special Master), BDI sought leave to file out of time, and the Court denied leave by order dated August 13, 2007.  The same order, however, permitted BDI to file a late Daubert motion.  Now BDI seeks to circumvent the Court's denial of leave to file an

untimely summary-judgment motion by asking the Court to determine the sufficiency of plaintiff's causation evidence under Rule 702 instead of Rule 56.

BDI relies on Cano v. Everest Minerals Corp., 362 F. Supp.2d 814, 822 (W.D. Tex. 2005), which held Cano's proffered expert testimony inadmissible because it was insufficient under Texas law to establish causation and thus failed to satisfy the "relevance prong" of Rule 702.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993) (Rule 702's requirement that opinion testimony assist the trier of fact "goes primarily to relevance"); but see id. at 587 (the basic standard of relevance under the federal rules "is a liberal one"). Wilburn responds by citing Taylor v. Bristol-Myers Squibb Co., 2004 WL 2058796 (N.D. Tex., 2004), which held that Texas substantive requirements for proving causation are irrelevant to the district court's determination of admissibility under Rule 702.  The Fifth Circuit has not resolved this conflict.  This Court, however, agrees with Taylor.  Sufficiency and relevancy are not the same, and there is no conceptual reason to include the former within the "relevancy prong" of Rule 702.  Due process and the orderly management of pretrial proceedings are best served by requiring compliance with Rule 56 and any local rules or standing orders governing summary judgment whenever the district court makes a pretrial determination that the available

evidence will be insufficient to satisfy the non-moving party's burden of proof.

As to the reliability prong of Rule 702, the Court finds the challenged opinion of Wilburn's treating neurologist, Kandesami Senthilkumar MD, admissible for the reasons stated with respect to Dr. Dennis in the <u>Stafford</u> Opinion and Order.  Dr. Senthilkumar has not been retained for litigation.  He was called in by the hospital after Wilburn was taken by ambulance from his workplace and remained Wilburn's treating neurologist thereafter.  Like Dr. Dennis, Dr. Senthilkumar will not be permitted to testify on direct examination by Wilburn's counsel about the inherent properties of ephedra except by adopting the general-causation evidence already admitted at trial.  Although Dr. Senthilkumar did not consider dose when he wrote in Wilburn's hospital chart that "stroke risk factors for this patient include recent use of a drug called Super Stinger," Pl. Exh. C at 4, and formed the opinion that "one of the probable causes that he had a stroke is the ephedra product," Senthilkumar Depo., Pl. Exh. A at 17-18, this failure does not render these opinions inadmissible, notwithstanding this Court's holding about dose in <u>Singh</u> et al <u>v. Herbalife Int'l Communications, Inc</u>. et al., No. 06 Civ. 00014.[1]

---

[1]"The reports and testimony of the generic experts in this MDL have shown that the effects of ephedra are dose-sensitive and short-lived.  For a case-specific expert's causation opinion to be reliable, it must be based on a careful analysis of the available facts about how much ephedra the injured person

Singh involved a retained expert, whose opinion is held to a higher standard in light of the time and compensation given to prepare it and the greater risk of abuse from a physician hired for litigation rather than treatment.  Moreover, in Singh the injury was hemorrhagic stroke — the only ephedra injury where a statistically significant epidemiological study has shown an absence of risk below a certain dose.  For this reason, the opinion of a retained causation expert in a hemorrhagic-stroke case is not reliable unless the expert has carefully analyzed the facts about dose and the Morgenstern study discussed in the Daubert Opinion at 15-22.  Wilburn's injury, however, was ischemic stroke, for which no minimum dose capable of causing injury has been found.

    Turning to Stafford, leave to renew Weight Warriors' summary-judgment motion is denied because the subsequent Texas decision in Borg-Warner does not alter the Court's view of plaintiff's burden of proof that was the basis of its 3/26/07 Opinion and Order.  Borg-Warner is an asbestos case where, typically, plaintiff's injury manifested itself decades after his cumulative exposure over several years to the asbestos of many unrelated defendants.  Although plaintiff at trial established exposure to "some" Borg-Warner asbestos, the Texas Supreme Court reversed the judgment against Borg-Warner because there was no

---

consumed and when."  Memorandum Order of July 13, 2007, at 1-2.

evidence quantifying that exposure and showing that such a dose "could be considered a substantial factor" in causing plaintiff's injury. Borg-Warner at *6. Ephedra, however, stands at the opposite end of the spectrum of toxic substances from asbestos. Its biological effects occur within a few hours after exposure and are short-lived, so that, in studies of ephedra, subjects were considered no longer exposed 24-72 hours after taking it. See Daubert Opinion at 21. Unlike asbestos, therefore, with ephedra the facts of a case almost always show that one specific product was ingested within the brief relevant time before a sudden injury like stroke. The close temporal proximity between Ms. Stafford's stroke and her use of ephedra, coupled with the general-causation evidence about ephedra's rapidly acting biological effects (in contrast to asbestos), permit a jury to infer that the dose she ingested was sufficient to be considered a substantial factor in causing her stroke.[2] While it is possible to imagine an ephedra case raising doubt about which ephedra product was taken immediately prior to the injury, in Stafford there is no such issue. Accordingly, Borg-Warner is

---

[2] The smoking-gun nature of many ephedra injuries has come into focus in the handful of cases where the Court has learned factual details through case-specific motions. In three of seven such cases — Wilburn, Stafford, and Matheny v. Body Dynamics Inc., No. 04 Civ. 8556 — on the day of a stroke or seizure at the workplace, the victims had ephedra capsules in their possession at work, and ambulance drivers or co-workers brought the capsules along with the patient to the emergency room.

inapposite, and leave to renew the summary-judgment motion is denied.

        SO ORDERED.

                                                            _____
                                                            JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       ~~September~~ 10/5/2007