```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
                                         :    04 M.D. 1598 (JSR)
In re: EPHEDRA PRODUCTS LIABILITY        :
LITIGATION                               :    MEMORANDUM ORDER
                                         :
---------------------------------------- x
PERTAINS TO Giordano v. Market
       America Inc. et al., No. 05
       Civ. 1018
```

JED S. RAKOFF, U.S.D.J.

By Summary Order dated August 18, 2008, the Court of Appeals for the Second Circuit temporarily remanded this case for the limited purpose of ascertaining whether "there is a genuine issue of material fact as to whether sufficient scientific or medical evidence was reasonably available to Giordano such that he could have ascertained the cause of his injury prior to March 2002." Giordano v. Market America, Inc., No. 06-2071-cv, 2008 WL 3842907, at *1 (2d Cir. Aug. 18, 2008). Thereafter, the parties submitted supplemental briefs on this issue, and oral argument was held on October 31, 2008. The Court now determines that, based on the record in this case, there remains a genuine factual dispute over whether Giordano could have ascertained the cause of his injury prior to March 2002.

As the parties made clear in their supplemental submissions, much of the evidence bearing on the question presented was put before the Court as part of the extensive "Daubert" hearing conducted by the Court in January and February 2005. Although that hearing was concerned with the admissibility of expert testimony, the parties had the same motive as on summary judgment to put before the Court their best evidence concerning the possible causal link between ephedra and

injuries such as Giordano's.  As this Court explained in its opinion dated September 18, 2005, In re Ephedra Products Liability Litigation, 393 F. Supp. 2d 181 (S.D.N.Y. 2005), the hearing established beyond any genuine dispute that the scientific evidence available at the time of the hearing (i.e., 2005) was insufficient to allow an expert witness to testify "with any degree of medical or scientific 'certainty' that ephedra causes the listed injuries," id. at 187.  More specifically, the Court found that

> [f]rom the evidence presented to the Court at the hearing on the instant motions, it is apparent that no scientific study has been conducted that "proves" that ephedra or ephedrine "causes" any of the listed injuries in the sense of establishing the high statistical relationship [. . .] that meets accepted scientific standards for inferring causality.

Id. at 189.

At the same time, however, the Court found that studies published at least as early as 1996 suggested a link between ephedra and both strokes and cardiac injuries that was sufficient under Fed. R. Evid. 702 to permit plaintiffs' experts to testify that

> "Ephedra products may be a contributing cause of stroke and cardiac injury in some people." [. . . H]owever, this opinion must be accompanied by the qualifications that there is not enough scientific data to prove such a causal relationship definitively and that controlled studies, if and when they are done, may disprove it.

Id. at 193.

In light of the state of medical and scientific knowledge in 2005, then, neither nor Giordano nor anyone else would have been able to "ascertain the cause of his injury prior to March 2002" if by "ascertain" one means "to find out or learn for a certainty."

2

Webster's New Collegiate Dictionary (2d ed. 1959).  Here, however, the Second Circuit used the word "ascertain" in the question it remanded to this Court presumably because that is the word used by the New York legislature in the pertinent statute, N.Y. C.P.L.R. 214-c(4).  In that context, the New York Appellate Division, Third Department, has construed "ascertain" – in a somewhat uncertain manner – to mean something akin to finding a probable connection.  Specifically, the Appellate Division has stated that, while the statute "does not require medical certainty or information sufficient to prevail at trial, [it does require] showing that sufficient information and knowledge existed to enable the medical or scientific community to ascertain the probable causal relationship between the substance and plaintiff's injury."  Pompa v. Burroughs Wellcome Co., 696 N.Y.S.2d 587, 592 (3d Dep't 1999).

Although the Second Circuit may want to consider certification to the Court of Appeals to sort this all out,[1] this

---

[1] Guidance might also be sought on precisely who has to know what before § 214-c applies.  Although the New York Court of Appeals stated in In re New York County DES Litigation, 89 N.Y.2d 506, 515 (1997) that "only the technical knowledge of the scientific and medical communities" is to be considered in determining whether a given plaintiff may obtain an extension of the limitations period under § 214-c, the Second Circuit subsequently suggested in dictum that the New York legislature likely "intended CPLR § 214-c(4) to refer only to scientific knowledge that was 'reasonably available to the plaintiff,'" Freier v. Westinghouse, 303 F.3d 176, 207 (2d Cir. 2002). Here, this Court finds (a) that at least some studies suggesting a possible connection between ephedra and injuries similar to Giordano's were published in reputable scientific journals that were publicly available as early as 1996, but (b) that most of the lawsuits asserting liability on the basis of such risks were not filed until after 2002, suggesting, at least, a lack of

Court is bound to follow the interpretation of the Appellate Division in the absence of persuasive evidence that the New York Court of Appeals would rule differently if presented with the issue. City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 456 (2d Cir. 2008). Applying the Pompa standard to the evidence placed before this Court, see supra, the most that can be said is that there remain genuine issues of material fact as to whether the information available prior to March 2002 was sufficient to "enable" the medical or scientific "community" to "ascertain" the "probable" causal relationship between ephedra and Giordano's injury. This is because some (but far from all) scientific inquirers thought the available information was reasonably suggestive (but hardly definitive) of a causal relationship between ephedra and injuries like Giordano's.

Accordingly, the answer to the question posed by the Court of Appeals ("whether there is a genuine issue of material fact as to whether sufficient scientific or medical evidence was reasonably available to Giordano such that he could have ascertained the cause of his injury prior to March 2002") is Yes: there are genuine issues of material fact remaining to be resolved on virtually any view one takes of the meaning of § 214-c(4).

The parties are directed to bring this Memorandum Order promptly to the attention of the panel of the Court of Appeals that remanded the case to this Court.

---

awareness of the risks by even the most interested members of the public prior to that time. How to apply these findings to § 214-c remains problematic, however, in the absence of greater guidance by the New York courts as to the statute's meaning.

SO ORDERED.

Dated: New York, NY
      February 23, 2009      JED S. RAKOFF, U.S.D.J.